UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PRESIDIO ADVENTURES DEVELOPMENT I, et al., | )<br>)<br>) |
| Plaintiffs, | ) 2:12-cv-01369-PMP-GWF |
| v. | ) |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | ) ORDER<br>) |
| Defendants. | ) |

Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6) (Doc. #48), filed on May 6, 2013. Plaintiffs Presidio Adventures Development I, Presidio Adventures Development II, Stephen Slatton, Brian Chavez, Julie V. Gutierrez, and Rudy Guzman filed a Response (Doc. #65) on August 20, 2013. Defendants filed a Reply[1] (Doc. #66) on September 3, 2013.

///
///
///
///

---

[1] In their Reply, Defendants argue for the first time that Defendants ReconTrust Company, N.A. ("ReconTrust") and Mortgage Electronic Registration System, Inc. ("MERS") should be dismissed from the case because ReconTrust did not owe any common law duties to Plaintiffs and because the First Amended Complaint contains no allegations specific to MERS. The Court declines to consider these arguments raised for the first time in reply because Plaintiffs were deprived of the opportunity to respond. Carstarphen v. Milsner, 594 F. Supp. 2d 1201, 1204 n.1 (D. Nev. 2009).

## I. BACKGROUND

On June 20, 2008, Plaintiffs Stephen Slatton, Brian Chavez, Julie V. Gutierrez, Zenon Cruz, Beverly Cruz, and Rudy Guzman (the "Individual Plaintiffs")[2] obtained two loans, each in the principal amount of $485,485.00, from Defendant Countrywide Bank, N.A. a/k/a Countrywide Bank, F.S.B. ("Countrywide"). (Pls.' First Am. Compl. (Doc. #41) ["Am. Compl."] at ¶¶ 12, 51.) Repayment of the loans was secured by two deeds of trust, one on condominium Unit 25301 and the second on Unit 26301, located at Palms Place, 4381 West Flamingo Road, Las Vegas, Nevada, 89103. (Id. at ¶¶ 13, 25-27, 52-53, Ex. A, Ex. B; Defs.' Mot. to Dismiss Pls.' First Am. Compl. for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6) (Doc. #48) ["Mot. to Dismiss"], Ex. A at 1, Ex. B, Ex. D at 1, Ex. E.) The Individual Plaintiffs subsequently transferred title of Unit 25301 to Presidio Adventures Development I, LLC ("Presidio I") and title of Unit 26301 to Plaintiff Presidio Adventures Development II, LLC ("Presidio II"). (Am. Compl. at ¶¶ 13-14, 28, 55-56; Mot. to Dismiss, Ex. C, Ex. F.) The Warranty Deeds transferring title of the Units to Presidio I and Presidio II were signed on July 31, 2008 and recorded on July 16 and 17, 2009. (Mot. to Dismiss, Ex. C at 1-2, Ex. F at 1-2.)

According to the First Amended Complaint, on January 25, 2011,[3] the Individual Plaintiffs entered into a Loan Modification Agreement with Defendant Bank of America, N.A. ("Bank of America"), successor by merger to Countrywide. (Am. Compl. at ¶¶ 29, 57, Ex. C.) The Loan Modification Agreement states the Individual Plaintiffs, Bank of America, and Mortgage Electronic Registration Systems, Inc. ("MERS") "agree to modify"

---

[2] At one point, the First Amended Complaint also refers to "Ms. Villegas" as an Individual Plaintiff. (Am. Compl. ¶ 28.) There are no other allegations regarding "Ms. Villegas" or her role in this case. The Court understands Plaintiffs to be referring to Plaintiff Anthony Villegas, who is listed in the First Amended Complaint's caption.

[3] The Loan Modification Agreement attached to Plaintiffs' First Amended Complaint is dated November 17, 2010. (Am. Compl., Ex. C at 2.)

2

1  the Deed of Trust recorded as Instrument Number 20080630-0004819 "to correct the
2  property address on the deed of trust to read 4381 W. Flamingo Rd. #26301, Las Vegas, NV
3  89103." (Am. Compl., Ex. C at 2.) The Deed of Trust recorded as Instrument Number
4  20080630-0004819 secures Unit 25301. (Am. Compl., Ex. A at 4; Mot. to Dismiss, Ex. E
5  at 4.) Plaintiffs allege the Loan Modification Agreement caused the Deed of Trust recorded
6  against Unit 25301 to be recorded against Unit 26301 as well. (Am. Compl., ¶¶ 29, 54.)

7  According to Plaintiffs, they contacted Bank of America and its related entities
8  numerous times to correct the error, to no avail. (Id. at ¶¶ 32-34, 59-60, 62.) Plaintiffs
9  allege the Countrywide and Bank of America entities "have continually represented and
10 promised the Plaintiffs that the duplicate mortgage and duplicate deed issues will be
11 repaired; yet such repairs have not yet been implemented." (Id. at ¶ 63.)

12 Plaintiffs allege they began experiencing financial difficulties and missing
13 mortgage payments in 2011. (Id. at ¶¶ 30, 62.) Plaintiffs further allege they have attempted
14 to short sale the condominium Units on multiple occasions, however, they have been unable
15 to do so because there are two deeds of trust recorded against Unit 26301 and there is
16 uncertainty regarding the deed of trust on Unit 25301. (Id. at ¶¶ 31, 63-65, 67.) Finally,
17 Plaintiffs allege they have suffered damage to their credit scores due to Defendants' delays
18 in reviewing Plaintiffs' requests for hardship assistance, in reviewing offers to short sale or
19 surrender the Units, and in reviewing Plaintiffs' eligibility for the Home Affordable
20 Mortgage Program. (Id. at ¶ 68.)

21 Plaintiffs brought suit against Defendants, asserting claims for breach of contract
22 and rescission (count one), breach of the implied covenant of good faith and fair dealing
23 (count two), violation of Nevada Revised Statutes § 106.210/declaratory relief (count
24 three), violation of the Fair Credit Reporting Act (count four), negligence (count five),
25 negligence per se (count six), negligent hiring, retention, and employment (count seven),
26 respondeat superior (count eight), and unjust enrichment (count nine). (Compl. (Doc. #1) at

15-24.) On March 25, 2013, Plaintiffs filed their First Amended Complaint in which they added Plaintiffs Anthony Villegas, Beverly Cruz, and Zenon Cruz and dropped their respondeat superior claim. (Pls.' First Am. Compl. (Doc. #41) ["Am. Compl."] at 2-3, 26.)

Defendants now move to dismiss, arguing that the eight remaining claims alleged against them fail as a matter of law. In their Response, Plaintiffs concede they fail to state a claim for violation of the Fair Credit Reporting Act,[4] but they request leave to amend this claim.[5] (Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss (Doc. #65) ["Pls.' Resp."] at 13-14.) Plaintiffs argue their other claims state a claim and therefore dismissal is improper.

## II. MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of a complaint based upon its "failure to state a claim upon which relief can be granted." To succeed on such a motion, the defendant must show the plaintiff does not make sufficient factual allegations to establish a plausible entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). In considering whether the complaint is sufficient to state a claim, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys. Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).

When ruling on a motion to dismiss, if the Court considers evidence outside the pleadings, it normally must convert the motion into a motion for summary judgment. United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). The Court "may, however,

---

[4] Plaintiffs previously conceded that their Complaint failed to state a claim for violation of the FCRA, and they requested leave to file their First Amended Complaint. (Response to Defs.' Mot. to Dismiss (Doc. #26) at 15.)

[5] Plaintiffs did not submit a proposed Second Amended Complaint to the Court.

4

1 consider certain materials—documents attached to the complaint, documents incorporated
2 by reference in the complaint, or matters of judicial notice—without converting the motion
3 to dismiss into a motion for summary judgment." Id. at 908.  Here, Plaintiffs submitted as
4 exhibits to their First Amended Complaint copies of various title documents recorded in the
5 Clark County Recorder's Office, as well as two Preliminary Title Reports.  Defendants
6 submitted as exhibits to their Motion to Dismiss copies of various title documents recorded
7 in the Clark County Recorder's Office, which include two of the same exhibits submitted
8 by Plaintiffs.  The recorded title documents are public records appropriate for judicial notice
9 under Federal Rule of Evidence 201(b)(2), and the Preliminary Title Reports are attached to
10 the First Amended Complaint.  As such, in reviewing the Motion to Dismiss, the Court
11 properly may consider these documents without converting the Motion into one for
12 summary judgment.[6]

### A.   Contract Claims (Counts One and Two)

14 Plaintiffs allege Defendants breached the parties' agreements related to Units
15 25301 and 26301 by causing duplicate deeds of trust to be recorded against Unit 26301
16 despite Defendants' knowledge there was only one mortgage indebtedness with respect to
17 that Unit.  Plaintiffs further allege Defendants breached the parties' agreements by failing to
18 provide Plaintiffs with clear and marketable title to the Units and by failing to notify
19 Plaintiffs that the duplicate deeds of trust would limit Plaintiffs' ability to sell the Units.
20 Finally, Plaintiffs allege that by allowing duplicate deeds of trust to be recorded and by
21 failing to correct the error, Defendants breached their implied covenant of good faith and

---

[6] In their Response, Plaintiffs argue Defendants attach to their Motion exhibits outside the scope of the pleadings.  Plaintiffs request leave to amend their First Amended Complaint and to file an additional response in the event the Court considers Defendants' exhibits.  Given that Defendants' exhibits are recorded title documents appropriate for judicial notice, that two of Defendants' exhibits are attached to Plaintiffs' First Amended Complaint, and that Plaintiffs also request that the Court take judicial notice of recorded title documents, the Court denies Plaintiffs' request to amend its First Amended Complaint or to file an additional Response on this basis.  (See Am. Compl. at 8, n.1.)

5

fair dealing under the contracts. Plaintiffs seek rescission of the deeds of trust for Defendants' failure to provide marketable title.[7]

Defendants move to dismiss, arguing Plaintiffs Presidio I and Presidio II do not have a contractual relationship with any of the Defendants. Specifically, Defendants argue Presidio I and Presidio II did not borrow money to purchase the Units and therefore are not parties to the loan agreements or deeds of trust. Defendants further argue Presidio I and Presidio II were not damaged by their inability to short sale the Units because they took title to the Units subject to the deeds of trust, which contain no promise by Defendants to allow a short sale.

With respect to the Individual Plaintiffs, Defendants argue Bank of America did not breach any promise to the Individual Plaintiffs. Specifically, Defendants argue that Bank of America, in its capacity as a lender, was not obligated to ensure Plaintiffs' success by approving a short sale or otherwise negotiating with Plaintiffs when such a duty was not mentioned in the deeds of trust. Defendants further argue they did not make any warranty of title to the Individual Plaintiffs because they did not sell the Units to the Individual Plaintiffs. Defendants also argue the Individual Plaintiffs were not harmed by Presidio I and Presidio II's inability to short sale the Units because the short sale offers received were for substantially less than the amounts the Individual Plaintiffs owe. Additionally, Defendants argue the Individual Plaintiffs do not have standing to sue for breach of contract because they no longer have title to the Units. Regarding Plaintiffs' request for rescission, Defendants argue rescission is a remedy to which to which Plaintiffs are not entitled.

///

---

[7] Plaintiffs also allege in the First Amended Complaint that Defendants promised on multiple occasions to correct the recording error, that Defendants failed to do so, and that Plaintiffs suffered monetary damage as a result of Defendants' failure to correct the error. Defendants do not address the alleged verbal promises in their Motion to Dismiss, and Plaintiffs do not raise the issue in their Response. The Court therefore will not address this issue.

6

1  Plaintiffs respond that Presidio I and Presidio II are the intended third party
2  beneficiaries of the contracts between Defendants and the Individual Plaintiffs.
3  Specifically, Plaintiffs argue that at the time the Individual Plaintiffs obtained the loan from
4  Defendants to purchase the Units, Defendants knew the Individual Plaintiffs intended to
5  transfer the Units to Presidio I and Presidio II. Plaintiffs further argue that when the
6  Individual Plaintiffs and Bank of America entered into the Loan Modification Agreement,
7  the warranty deeds transferring title to Presidio I and Presidio II already had been recorded.
8  Plaintiffs further respond that because the Individual Plaintiffs are parties to contacts with
9  Defendants, the Individual Plaintiffs necessarily have standing to sue for breach of those
10 contracts.

11 "A plaintiff in a breach of contract action must show (1) the existence of a valid
12 contract, (2) a breach by the defendant, and (3) damage as a result of the breach." Brown v.
13 Kinross Gold U.S.A., Inc., 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008) (quotation omitted);
14 see also Calloway v. City of Reno, 993 P.2d 1259, 1263 (Nev. 2000), superseded on other
15 grounds by statute as recognized in Olson v. Richard, 89 P.3d 31, 33 (Nev. 2004). For a
16 plaintiff to bring a breach of contract action against a defendant, the plaintiff and defendant
17 must have a contractual relationship. See Vargas v. Cal. St. Auto. Ass'n Inter–Ins. Bureau,
18 788 F. Supp. 462, 464 (D. Nev. 1992). Additionally, every contract in Nevada "imposes
19 upon the contracting parties the duty of good faith and fair dealing." State, Univ. & Cmty.
20 Coll. Sys. v. Sutton, 103 P.3d 8, 19 (Nev. 2004) (quotation omitted). A breach of good
21 faith and fair dealing claim necessarily "fails absent a contractual relationship." Alam v.
22 Reno Hilton Corp., 819 F. Supp. 905, 910 (D. Nev. 1993).

23 Presidio I and Presidio II are not parties to the deeds of trust or the Loan
24 Modification Agreement, nor do Presidio I and Presidio II specifically allege they were
25 intended third party beneficiaries of either agreement. Further, Plaintiffs do not allege
26 Presidio I or Presidio II were parties to the loan agreements or that Defendants knew the

7

Individual Plaintiffs intended to transfer the Units to Presidio I and Presidio II. The only mention of third party beneficiaries in the First Amended Complaint is the allegation that "[c]ertain Plaintiffs were intended third-party beneficiaries of the agreements," but this allegation does not specify which Plaintiffs or agreements it is referring to.  (Am. Compl. at ¶¶ 74, 82.)  Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it demands more than "labels and conclusions."  Iqbal, 556 U.S. at 678. Presidio I and Presidio II's breach of contract and breach of the implied covenant of good faith and fair dealing claims regarding the parties' written contracts therefore fail to state a claim.  See Ins. Co. of the West v. Gibson Tile Co., 134 P.3d 698, 702 (Nev. 2006) (en banc) (stating every contract in Nevada implies a covenant of good faith and fair dealing); Wyatt v. Bowers, 747 P.2d 881, 882-83 (Nev. 1987) (holding individuals who were not parties to or recipients of a particular promise cannot sue to enforce breach of that covenant); Olson v. Iacometti, 533 P.2d 1360, 1364 (Nev. 1975) (stating a plaintiff cannot pursue a breach of contract claim if he is not a party to the contract, unless he is an intended third party beneficiary of the contract).

  The Individual Plaintiffs likewise fail to state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing with respect to the written contracts at issue.  The gravamen of Plaintiffs' contract claims is that Defendants breached the written contracts by failing to correct the recording error with respect to Unit 26301. However, Plaintiffs do not allege that the deeds of trust or the Loan Modification Agreement require the Defendants to correct any recording errors.  Instead, in the Loan Modification Agreement, the Individual Plaintiffs and Defendants agreed, perhaps mistakenly, to record the deed of trust as to Unit 25301 against Unit 26301.  Nor do Plaintiffs allege that any other written agreement requires Defendants to correct any recording errors.  The Individual Plaintiffs' breach of contract claim regarding the parties' written contracts therefore fails as a matter of law.  See Brown, 531 F. Supp. 2d at 1240

(listing breach as an essential element of a breach of contract claim).

The Individual Plaintiffs' breach of the implied covenant of good faith and fair dealing claim arising out of the parties' written contracts also fails as a matter of law because there can be no breach of the implied covenant where the contract at issue expressly permits the actions being challenged. See Nelson v. Heer, 163 P.3d 420, 427 (Nev. 2007) (holding a defendant did not breach the implied covenant of good faith and fair dealing because the defendant made all disclosures required by the agreement between the parties). As discussed above, in the Loan Modification Agreement, the parties expressly agreed to record the deed of trust as to Unit 25301 against Unit 26301. The Court therefore will dismiss counts one and two. Given counts one and two fail, the Court also will dismiss Plaintiffs' claim for the remedy of rescission. See Great Am. Ins. Co. v. Gen. Builders, Inc., 934 P.2d 257, 262 n.6 (Nev. 1997) (stating that rescission is a remedy, not an independent cause of action).

### B.   Violation of Nevada Revised Statutes § 106.210 (Count Three)

Plaintiffs allege Defendants violated Nevada Revised Statutes § 106.210 "when Defendants caused the same mortgage to be recorded twice and similarly caused two separate deeds to be recorded on [Unit 26301]." (Am. Compl. at ¶ 90.) Plaintiffs further request a declaration that Defendants are in violation of § 106.210. Defendants move to dismiss this claim, arguing it is not ripe because the trustee of the deeds of trust has not commenced foreclosure proceedings with respect to the Units. Plaintiffs respond that they state a claim for violation of § 106.210 because the statute requires full and adequate record keeping and recording and because Defendants did not properly record the deeds of trust.

Section 106.210(1) provides in relevant part that "[i]f the beneficial interest under a deed of trust has been assigned, the trustee under the deed of trust may not exercise the power of sale pursuant to NRS 107.080 unless and until the assignment is recorded pursuant to this subsection." "[T]he purpose of recording a beneficial interest under a deed of trust is

9

to provide 'constructive notice . . . to all persons.'" Edelstein v. Bank of New York Mellon, 286 P.3d 249, 259 (Nev. 2012) (quoting Nev. Rev. Stat. § 106.210).

Here, Plaintiffs do not allege Defendants failed to record any assignments of the deeds of trust at issue in this case. Nor do Plaintiffs allege that the trustee under the deeds of trust has commenced foreclosure proceedings with respect to either of the Units pursuant to § 107.080. Accordingly, Plaintiffs' claim based on violation of § 106.210 fails as a matter of law. The Court therefore will dismiss count three.

### C. Violation of the Fair Credit Reporting Act (Count Four)

The Individual Plaintiffs allege Defendants violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., by recording two deeds of trust against Unit 26301, thereby doubling the amount of indebtedness shown on the Individual Plaintiffs' credit profiles with respect to Unit 26301. The Individual Plaintiffs further allege Defendants violated the FCRA by failing to timely correct the recording error, which caused the negative information to continue to be reported on the Individual Plaintiffs' credit profiles. Defendants argue there is not a private right of action under the sections of the FCRA which Plaintiffs allege Defendants violated, with the exception of § 1681s-2(b). As for § 1681s-2(b), Defendants argue Plaintiffs fail to allege facts meeting the elements of a § 1681s-2(b) claim. In their Response, Plaintiffs concede they fail to state a claim for violation of the FCRA. The Court therefore will dismiss count four.

### D. Negligence Claims (Counts Five Through Seven)

With respect to their negligence claim, Plaintiffs allege Defendants had a duty to properly record the deeds of trust related to the Units. Plaintiffs allege Defendants breached this duty by recording two deeds of trust against Unit 26301 and by failing to correct the error. As for their negligence per se claim, Plaintiffs allege that they are within the class of persons intended to be protected by Nevada Revised Statutes § 106.210 and the FCRA, that Defendants violated these statutes, and that Plaintiffs suffered the types of harm intended to

10

1  be prevented by these statutes.[8]  Finally, as for their negligent hiring, retention, and
2  employment claim, Plaintiffs allege Defendants failed to use ordinary care in the hiring,
3  retention, training, and supervision of their employees who recorded the duplicate deed of
4  trust, who failed to correct the recording error, and who failed to timely consider short sale
5  offers received on the Units.

6  Defendants move to dismiss, arguing Plaintiffs' negligence-based claims fail as a
7  matter of law because Defendants have no duty to Plaintiffs.  Specifically, Defendants
8  argue Countrywide did not owe a duty to the Individual Plaintiffs because Countrywide and
9  the Individual Plaintiffs have an arm's-length lender-borrower relationship.  Defendants do
10 not explain why the Defendants besides Countrywide do not owe a duty to the Individual
11 Plaintiffs.  Defendants further argue that none of them have a legal relationship with
12 Presidio I and Presidio II and therefore owe them no duty.  Finally, Defendants argue
13 Plaintiffs' negligence claims are barred under the economic loss doctrine.

14 Plaintiffs respond that Defendants had a duty to properly record the deeds of
15 trust.  Plaintiffs further respond that the economic loss doctrine does not apply because they
16 "are seeking compensation for loss of opportunity, loss of time, damage to their credit and
17 litigation costs incurred vindicating their rights, among others." (Pls.' Resp. at 10.)

18 Nevada recognizes a rule that a plaintiff may not recover for "purely economic
19 loss" in tort actions. Calloway, 993 P.2d at 1270.  "Purely economic loss is generally
20 defined as the loss of the benefit of the user's bargain . . . including . . . pecuniary damage
21 for inadequate value, the cost of repair and replacement of the defective product, or
22 consequent loss of profits, without any claim of personal injury or damage to other
23 property." Id. at 1263 (quotation omitted).  This rule, known as the economic loss doctrine

---

[8] Given that Plaintiffs already fail to state a claim for violation of Nevada Revised Statutes § 106.210 or the FCRA, these statutes cannot provide a basis for Plaintiffs' negligence per se claim.

11

1  "serves to distinguish between tort, or duty-based recovery, and contract, or promise-based
2  recovery, and clarifies that economic losses cannot be recovered under a tort theory." Id. at
3  1264; Terracon Consultants W., Inc. v. Mandalay Resort Grp., 206 P.3d 81, 89 (Nev. 2009)
4  (holding that the economic loss doctrine bars recovery in professional negligence cases
5  because such loss is recoverable under the contract provisions and traditional contract
6  remedies).

7  The rule's primary purpose is to protect a party from "unlimited liability for all of
8  the economic consequences of a negligent act, particularly in a commercial or professional
9  setting, and thus to keep the risk of liability reasonably calculable." Local Joint Exec. Bd.
10 of Las Vegas, Culinary Workers Union, Local No. 226 v. Stern, 651 P.2d 637, 638 (Nev.
11 1982). Although arising from products liability law, Nevada has extended the economic
12 loss doctrine to other types of claims. See Id. (holding economic loss doctrine barred hotel
13 employees from recovering lost wages and employment benefits under negligence theory).

14 Here, the economic loss doctrine bars Plaintiffs' negligence-based claims because
15 Plaintiffs allege losses that are economic in nature. Specifically, Plaintiffs allege they
16 "have been unable to sell the [Units] due to Defendants['] negligent actions, inactions, and
17 omissions." (Am. Compl. at ¶ 110.) In their general allegations, Plaintiffs also state they
18 have been unable to obtain mortgage hardship assistance, unable to maintain the debt
19 service on the Units, and have suffered damage to their credit scores. (Id. at ¶¶ 67-68.)
20 Although Plaintiffs also allege they have suffered "anxiety" related to threatened
21 foreclosure, nowhere in the First Amended Complaint do Plaintiffs allege they suffered a
22 physical impact or serious emotional distress resulting in physical injury or illness. (Id. at
23 ¶ 34.) Generally, Nevada does not allow plaintiffs to recover for emotional distress absent
24 proof of a physical impact, or "serious emotional distress" resulting in physical injury or
25 illness. Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1387 (Nev. 1998). The Court
26 therefore will dismiss counts five through seven.

### E.     Unjust Enrichment (Count Eight)

Plaintiffs allege Defendants were unjustly enriched by accepting Plaintiffs' mortgage payments even though Defendants failed to provide to Plaintiffs marketable title to the Units.  Defendants move to dismiss, arguing the deeds of trust and loan agreements bar the Individual Plaintiffs' unjust enrichment claim as a matter of law.  As for Presidio I and Presidio II, Defendants argue the unjust enrichment claim fails because Presidio I and Presidio II did not confer a benefit on Defendants and merely accepted title to the Units from the Individual Plaintiffs.  Defendants further argue Plaintiffs do not allege Presidio I and Presidio II paid any money to Defendants.

Plaintiffs respond that Defendants unjustly retained the mortgage payments Plaintiffs made between the date of the Loan Modification Agreement that caused the duplicate recording of the deed of trust on Unit 26301 and the date Plaintiffs stopped making mortgage payments.  Plaintiffs argue Defendants' retention of the mortgage payments made during this time period was unjust because Plaintiffs did not have marketable title to the Units during this time.  Plaintiffs do not respond to Defendants' argument that an unjust enrichment claim fails as a matter of law when there is an express, written contract.

"Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another."  In re Amerco Derivative Litig., 252 P.3d 681, 703 (Nev. 2011) (quotation omitted).  In Nevada, a party may not recover on a theory of unjust enrichment when there is an express, written contract "because no agreement can be implied when there is an express agreement."  Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975, 942 P.2d 182, 187 (Nev. 1997).

Given that the Individual Plaintiffs allege they are parties to the deeds of trust, loan agreements, and the Loan Modification Agreement, the Individual Plaintiffs' unjust enrichment claim fails as a matter of law.  However, taking Plaintiffs' allegations and all

13

reasonable inferences therefrom as true, Presidio I and Presidio II state a claim for unjust enrichment. The First Amended Complaint alleges that "Plaintiffs made payments on the Subject Mortgages." (Am. Compl. at ¶ 131.) It further alleges Defendants accepted and retained payments they should not have retained because of the title defects at issue in this case. The Court therefore will grant Defendants' Motion to Dismiss count eight with respect to the Individual Plaintiffs and deny Defendants' Motion to Dismiss with respect to Presidio I and Presidio II.

### F. Request to Amend

In their Response, Plaintiffs request leave to amend counts three and four of their First Amended Complaint, which allege violations of Nevada Revised Statutes § 106.210 and the FCRA. Defendants reply that the Court should deny leave to amend based on futility.

Generally, a plaintiff may amend its complaint once "as a matter of course" within twenty-one days of serving it, or within twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." Id.; Foman v. Davis, 371 U.S. 178, 182 (1962). "The court considers five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." United States v. Corinthian Colls., 655 F.3d 984, 995 (9th Cir. 2011). It is within the district court's discretion to determine whether to grant leave to amend. Gardner v. Martino, 563 F.3d 981, 990 (9th Cir. 2009). Moreover, under Local Rule 15-1, a party who moves for leave to amend "shall attach the proposed amended pleading to any motion to amend."

///

Here, there is no indicia of bad faith or undue delay. Therefore, the central questions are whether amendment would be futile, whether Plaintiffs previously have amended their Complaint, and whether amendment would result in prejudice to Defendants. Given that Plaintiffs do not submit a proposed second amended complaint as required by Local Rule 15-1, or otherwise explain the changes they seek to make to counts three and four, the Court cannot assess whether the requested amendment would be futile. As for previous amendments, the Court already has afforded Plaintiffs the opportunity to file a First Amended Complaint. (Order (Doc. #40).) Plaintiffs' Response does not explain how amending the complaint for a second time will cure the defects in the First Amended Complaint. Prolonging the litigation by permitting further amendment would result in undue prejudice to Defendants. As such, the Court, in its discretion, will deny Plaintiffs' request to amend counts three and four.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6) (Doc. #48) is hereby GRANTED in part and DENIED in part. The Motion is DENIED with respect to Plaintiffs Presidio Adventures Development I and Presidio Adventures Development II's unjust enrichment claim in count eight. The Motion is GRANTED in all other respects.

IT IS FURTHER ORDERED that Plaintiffs' request to amend counts three and four of the First Amended Complaint is DENIED.

DATED: March 26, 2014

_____
PHILIP M. PRO
United States District Judge