UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PRESIDIO ADVENTURES DEVELOPMENT I, et al.,<br><br>                            Plaintiff(s),<br><br>    v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, et al.,<br><br>                            Defendant(s). | Case No. 2:12-CV-1369 JCM (GWF)<br><br>ORDER |

      Presently before the court is plaintiffs Presidio Adventures Development I ("Presidio I"); **Presidio Adventures** Development II ("Presidio II"); Stephen Slatton; Brian Chavez; Julie Gutierrez; and Rudy Guzman's (hereinafter "plaintiffs") motion for summary judgment. (Doc. # 84). Defendants Countrywide Financial Corporation; Countrywide Bank, N.A. ("Countrywide Bank"); Countrywide Home Loans, Inc.; Bank of America, N.A. ("BANA"); ReconTrust Company, N.A.; and Mortgage Electronic Registration System (hereinafter "defendants") filed a response, (doc. # 85), and plaintiffs filed a reply, (doc. # 87).

      Also before the court is plaintiffs' motion for leave to file a second amended complaint. (Doc. # 88). Defendants filed a response, (doc. # 89), and plaintiffs filed a reply, (doc. # 90).

**I.    Background**

      The instant case arises from a mortgage dispute. Many issues that were initially the subject of the underlying action have been adjudicated by the court. Two issues remain in dispute: (1) whether defendants have been unjustly enriched and (2) whether titles to the properties in this action are marketable.

**James C. Mahan**
**U.S. District Judge**

In 2008, the individual plaintiffs purchased two high rise condominiums, unit 25301 ("unit 1") and unit 26301 ("unit 2"), at Palms Place in Las Vegas. (Doc. # 20). The individual plaintiffs entered into two identical mortgage agreements with Countrywide Bank for $485,485.00 each. On June 30, 2008, deeds of trust were recorded on unit 1 and unit 2. (Doc. # 1). On the same date, a second erroneous deed of trust was recorded for the mortgage on unit 2. (*Id.*).

On July 1, 2008, BANA became a successor by merger of Countrywide Bank. (Doc. # 41). As a result, BANA assumed all liabilities of Countrywide Bank, including the deeds of trust in the instant dispute. (*Id.*). In July of 2009, the individual plaintiffs transferred the titles to unit 1 and unit 2 to Presidio I and Presidio II. (Doc. # 1).

In January of 2011, the individual plaintiffs and BANA entered into a loan modification agreement. (*Id.*). The purpose of the agreement was to correct mistakes concerning the second erroneous deed of trust on unit 2 and create clear and marketable title. (Doc. # 1). However, the duplicate recordation was never corrected and there continued to be two deeds of trust recorded against unit 2. (*Id.*).

In or around August 2011, plaintiffs faced financial difficulties. As a result, plaintiffs began missing payments on their mortgages. (Doc. # 88). Plaintiffs attempted to sell, surrender, or short sale both units. Plaintiffs allege they were unsuccessful because they did not have clear marketable title due to the erroneous deed of trust on unit 2. (*Id.*).

Plaintiffs claim that they repeatedly notified defendants of the erroneous deed of trust and demanded that the recordation be fixed, to not avail. (Doc. # 41). Plaintiffs allege that defendants' failure to provide clear and marketable title prevented them from selling unit 1 and unit 2. (Doc. # 41). Plaintiffs further allege that defendants unjustly accepted over $300,000 in monthly mortgage payments from plaintiffs, while never providing clear marketable title in return. (Doc. # 85).

On March 25, 2014, the court dismissed all claims by the individual plaintiffs but granted plaintiffs leave to pursue an unjust enrichment claim. The court issued a new scheduling order, setting a deadline of December 20, 2014, to amend or add claims and parties.

James C. Mahan
U.S. District Judge

- 2 -

## II. Legal Standard

### a. Leave to amend

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court has interpreted Rule 15(a) and confirmed the liberal standard district courts must apply when granting such leave.

In *Foman v. Davis,* 371 U.S. 178 (1962), the Court explained:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Id.* at 182.

Rule 16(b) provides that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b). *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). If the moving party demonstrates good cause under Rule 16(b), then it must then establish that the proposed amendment is permissible under the factors germane to Rule 15. *Id.* "[T]he existence or degree of prejudice to the party opposing the modification" may supply "additional reasons to deny" a request for leave to amend, but "the focus of the inquiry is upon the moving party's reason for seeking modification." *Id.* "If that party was not diligent, the inquiry should end." *Id.*

### b. Summary judgment

The Federal Rules of Civil Procedure provide for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at

1  trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine
2  issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests.,*
3  *Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

4  In contrast, when the nonmoving party bears the burden of proving the claim or defense,
5  the moving party can meet its burden in two ways: (1) by presenting evidence to negate an
6  essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party
7  failed to make a showing sufficient to establish an element essential to that party's case on which
8  that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the
9  moving party fails to meet its initial burden, summary judgment must be denied and the court need
10 not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144,
11 159–60 (1970).

12 If the moving party satisfies its initial burden, the burden then shifts to the opposing party
13 to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*
14 *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the
15 opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient
16 that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
17 versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,
18 631 (9th Cir. 1987).

19 In other words, the nonmoving party cannot avoid summary judgment by relying solely on
20 conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,
21 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
22 pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
23 for trial. *See Celotex Corp.*, 477 U.S. at 324. At summary judgment, a court's function is not to
24 weigh the evidence and determine the truth, but to determine whether there is a genuine issue for
25 trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the
26 nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at
27 255. But if the evidence of the nonmoving party is merely colorable or is not significantly
28 probative, summary judgment may be granted. *See id.* at 249–50.

James C. Mahan
U.S. District Judge

**III.   Discussion**

The court will first address plaintiffs' motion for leave to amend.  The court will then address defendants' motion for summary judgment.

a.   *Leave to amend under Rule 15 and Rule 16*

Plaintiffs seek leave to amend their complaint under Rule 15 to add a claim for declaratory relief that titles to the properties subject to this suit are marketable.  Defendants argue that Rule 16, not Rule 15, applies because the deadline to amend has passed.  Under Rule 16, plaintiffs must show good cause to modify the scheduling order.  *See* Fed. R. Civ. P. 16(b).

Good cause under Rule 16 focuses primarily upon the "diligence of the party seeking the amendment."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  *Id.*  Parties cannot circumvent Rule 16's requirements by citing to Rule 15.  *Id.* at 610.

Here, plaintiffs argue that leave to amend would cause no prejudice to this suit because no additional discovery is required.  However, good cause focuses primarily on diligence.  Plaintiffs fail to show that they were diligent in seeking to amend the complaint.

Plaintiffs filed their original complaint on August 2, 2012.  Plaintiffs amended their complaint for the first time in March 2013, and were allowed until December 20, 2014, to move to amend a second time.  Plaintiffs did not move to amend until June of 2014, nearly six months after the scheduling deadline had passed.  Plaintiffs provide no explanation for their delay.  Accordingly, plaintiffs' motion for leave to file a second amended complaint will be denied.

b.   *Summary judgment*

i.   *Voluntary payment doctrine*

"The voluntary payment doctrine is an affirmative defense that provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment."  Nevada Ass'*n Servs. v. Eighth Jud. Dist. Ct.*, 130 Nev. Adv. Op. 94, 338 P.3d 1250, 1253 (2014), reh'*g denied* (Mar. 23, 2015); *see also Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 667 (7th Cir. 2001).  The term "voluntary" in the voluntary payment doctrine

focuses on whether a person willingly pays a bill without protest regarding correctness or legality. *Nevada Ass'n Servs.*, 338 P.3d at 1253.

Defendants argue that they are entitled to summary judgment based on the voluntary payment doctrine. Plaintiffs counter that the voluntary payment doctrine does not apply here because plaintiffs did not make any payments after becoming fully informed that the recordation of the deeds and the loan modification agreement were improper.

The court finds that the voluntary payment doctrine applies. Plaintiffs were not forced to make any payments, and they did so without protest as to their correctness or legality. Thus, the payments qualify as "voluntary" under the voluntary payment doctrine. *Id.*; *see also Tanita Corp. of Am. v. Befour, Inc.*, No. 06 C 4459, 2009 WL 54509, at *6 (N.D. Ill. Jan. 6, 2009) ("[T]he voluntary payment doctrine obliges a party to challenge a payment either before or at the time it makes the payment.").

For the voluntary payment doctrine to be effective, plaintiffs must have been fully informed. *See Nevada Ass'n, Servs.*, 338 P.3d at 1254 ("[It] is well settled that money voluntarily paid, with full knowledge of all the facts, although no obligation to make such payment existed, cannot be recovered back."). However, plaintiff Slatton, a member of Presidio I and Presidio II, as well as other members of Presidio I and Presidio II, signed the loan modification agreement. When Slatton and the other members signed, they indicated that plaintiffs had full knowledge of the agreement, including the erroneous deed of trust recordation. Therefore, the voluntary payment doctrine applies.

### ii. Payment in defense of property exception

If the moving party can show that voluntary payment was made, the burden shifts to the nonmoving party to show that an exception to the voluntary payment doctrine is applicable. *Id.* "If an exception applies, a plaintiff is not precluded from recovering a payment that it made without protest." *Id.* at 1254. One exception to the voluntary payment doctrine is payment in defense of property. *See Cobb v. Osman*, 433 P.2d 259, 263 (Nev. 1967) ("It is well settled that one is not a volunteer or stranger when he pays to save his interest in his property.").

James C. Mahan
U.S. District Judge

Since defendants have met their burden by showing that the voluntary payment doctrine applies, the burden shifts to plaintiffs to show that the defense of property exception is germane here.  Plaintiffs argue that payments they made to BANA were for the purpose of protecting and preserving their interest in the properties.  Plaintiffs further claim that they made payments as an obligation to save their interests.

Property "that is not subject to ongoing or imminent foreclosure proceedings does not create a risk of the loss of property."  *Nevada Ass'n Servs.*, 338 P.3d 1250 at 1256.  Here, there was no imminent or ongoing foreclosure proceeding against either unit owned by plaintiffs.

Therefore, the payment in defense of property exception does not apply here.  The voluntary payment doctrine precludes plaintiffs' recovery on their sole remaining unjust enrichment claim.  Accordingly, the court will grant defendants' motion for summary judgment.

## IV.  Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiff's motion for leave to file a second amended complaint, (doc. # 88), be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment, (doc. # 84), be, and the same hereby is, GRANTED.

The clerk shall enter judgment accordingly and close the case.

DATED July 21, 2015.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 7 -